**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANCES A. KELLEY, Ph.D. | ) | Civil Action No. <u>2:23-cv-2085</u> |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARLOW UNIVERSITY, | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | Filed Electronically |

## COMPLAINT IN CIVIL ACTION

Plaintiff Frances A. Kelley, Ph.D., by and through undersigned counsel, files the following Complaint in Civil Action.

## I.  PARTIES

1.      Plaintiff Frances A. Kelley, Ph.D. ("Dr. Kelley") is a resident of Allegheny County, Pennsylvania and a former employee of Defendant Carlow University ("Carlow").

2.      Carlow is a private, liberal arts university in Pittsburgh, Pennsylvania.

## II.  JURISDICTION

3.      The jurisdiction of this Court over the matters set forth in this Complaint is founded upon 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

## III.  VENUE

4.      The facts set forth this Complaint occurred in Allegheny County, Pennsylvania, therefore, jurisdiction is properly before this Court.

## IV.  ADMINISTRATIVE EXHAUSTION

5.      On or about February 1, 2023, Dr. Kelley filed an administrative charge with the U.S. Equal Employment Opportunity Commission (EEOC) that stated claims for discrimination on the

basis of sex, age, disability, retaliation, sexual orientation, and regarded as disabled, docketed as 533-2023-00937.

6.      The EEOC issued a right to sue letter on September 13, 2023.

7.      This complaint is filed within 90 days of the right to sue letter, which is timely.

8.      Dr. Kelley dual-filed her charge with the Pennsylvania Human Relations Commission and upon expiration of the one year waiting period she will move to amend the complaint to add companion claims under the Pennsylvania Human Relations Act.

## V. FACTS

9.      Dr. Kelley is female and a lesbian.

10.     Dr. Kelley was born in 1956 and is 67 years of age.

11.     Dr. Kelley suffers from post-traumatic stress disorder ("PTSD").

12.     Dr. Kelley was employed by Carlow as a tenured Full Professor in the Department of Psychology, Counseling & Criminology.

13.     Dr. Kelley earned a Doctorate in Counseling Psychology from the University of Maryland in 2002.

14.     From 2002 to 2003, Dr. Kelley worked as an Associate Faculty member for the Georgia School of Professional Psychology; from 2003 to 2006, she worked as a tenure-track Assistant Professor for Louisiana Tech University, Department of Psychology & Behavioral Sciences, and from 2006 to 2007 she worked as a tenure-track Assistant Professor in the Department of Counseling, Rehabilitation Counseling, and Counseling Psychology at West Virginia University.

15.     Dr. Kelley was hired by Carlow in August 2007 and remained employed at the University until her recent termination from her tenured Full Professor position effective October

2

28, 2022.

16.     At Carlow, Dr. Kelley held the positions of (a) Assistant Professor (August 2007-August 2009), (b) Associate Professor (August 2009-March 2014), and (c) Professor (August 2014-Fall 2022).

17.     Dr. Kelley received tenure in 2012.

18.     Dr. Kelley consistently received favorable reviews for her teaching, scholarship, and service.

19.     Dr. Kelley received numerous awards at Carlow including the Dorothy Weber Cochran Award for Research in 2015 as well as other outside awards.

20.     In 2018, Dr. Kelley experienced a traumatic incident in her office when a graduate student held her captive; this graduate student historically had documented serious behavioral problems including extreme anger management difficulty.  The graduate student was in Dr. Kelley's Fall 2018 practicum class.  She was removed from her practicum for unprofessional conduct and insubordination.  As a result, she was placed on probation within the program.  Although the graduate student had held Dr. Kelley and another student captive, the graduate student was not disciplined in any way and allowed to graduate.

21.     At the time she was held captive, the graduate student, a female, weighed 280 pounds; Dr. Kelley weighed approximately 190 pounds and was terrified.

22.     Following the incident, Dr. Kelley experienced PTSD, a qualified disability which substantially limited the major life activities of sleeping, thinking, eating, and stimulated anxiety and depression.

23.     In a matter of months, Dr. Kelley involuntarily lost over 60 pounds.

24.     Dr. Kelley sought accommodations including asking the administration to remove the graduate student from the campus and/or to lock the office suite to protect Dr. Kelley and allow her to feel more secure.  The administration declined to do either.

25.     In addition, the administration did not provide any help or support for Dr. Kelley.

26.     Since the 2018 incident Dr. Kelley has been treated harshly and shunned by members of the administration (including Bridgette Cofield) and faculty (including Melanie Kautzman and Travis Schermer).

27.     By letter dated August 23, 2022 from Carlow Provost and Vice President of Academic Affairs Sibdas Ghosh, Ph.D., Dr. Kelley was informed of her pending dismissal for cause.

28.     The letter falsely charged Dr. Kelley with a "breach of professional conduct" and a "lack of professionalism."

29.     In particular, Dr. Kelley was accused of (a) "screaming, threatening, and swearing" at a student, and (b) "hostility, defensiveness, and lack of collaboration" with the external UPMC partner and/or UPMC Presbyterian Shadyside d/b/a Western Psychiatric Institute and Clinic ("WPIC").

30.     Carlow immediately placed Dr. Kelley on temporary administrative leave, removed her from the classroom, barred her from working with her dissertation students, and prohibited her from serving on committees or engaging with external partners.

31.     These accusations are vague, false, and a pretext for discrimination.

32.     The accusations and Carlow's crediting of those accusations reflect animus for her being a woman, a lesbian, her age and/or disability and/or retaliation.

33.     By way of background, as part of Dr. Kelley's Doctoral Practicum Class, students are required to write up a case of a client they have worked with at their practicum site while redacting (or changing) names and identifying information.  The write up is to include a transcript of the session(s) based on the student's memory/notes.  Students are prohibited from recording the session.  In advance of the student's presentation, the redacted write up is shared among the class and the professor on a confidential basis.

34.     In June 2022, as part of the practicum, B.S., an excellent female student, observed a session of virtual therapy between a WPIC therapist and her client, prepared a write up of this session based on her notes/memory, and as directed shared her confidential redacted write up only with the class and professor all for an important confidential educational exercise.

35.     Vincent Reginella, a male graduate student in the class, was dating the WPIC therapist, Alexandra Salerno.

36.     In violation of practicum protocol and professional ethics, student Reginella showed the confidential write up to Ms. Salerno, the WPIC therapist, who was his girlfriend.

37.     On June 27, 2022, Dr. Kelley spoke briefly to Mr. Reginella.

38.     Mr. Reginella admitted that he gave B.S.'s write up to his girlfriend, Ms. Salerno of WPIC.

39.     Dr. Kelley informed Mr. Reginella that he had provided a confidential document to Ms. Salerno, his girlfriend, and that he did not recuse himself from the case presentation which were both unethical.

40.     When Dr. Kelley told the student that his actions were unethical because he shared confidential information in violation of course requirements and the code of ethics, he became

argumentative, belligerent, and disrespectful which was not unlike how she had experienced him in the past, and exhibited behavior that had been documented in Mr. Reginella's annual student evaluations for the past two years.

41.     Contrary to Carlow's administration's accusation, Dr. Kelley did not "scream," "threaten," or "swear" at Mr. Reginella, but acted in a professional manner.

42.     Ms. Salerno falsely notified Tiffany Painter, the WPIC administrator, that B.S. had recorded the session, but Ms. Salerno never spoke with B.S. and never heard or saw any recording (which did not exist).

43.     On June 27, 2022, Dr. Kelley spoke with Tiffany Painter, the WPIC administrative director, about the situation.

44.     During the conversation, Dr. Kelley was professional.

45.     Dr. Kelley expressed that what Mr. Reginella and Ms. Salerno did was unethical and violated the course syllabus which Ms. Painter did not deny.

46.     Dr. Kelley firmly stood up for her student, B.S., and reported that this student had not recorded the client, or violated HIPPA as Ms. Painter had alleged.

47.     Out of an abundance of caution, it was decided that B.S.'s write up would be destroyed by the other students with written assurances that it had been destroyed.

48.     Dr. Kelley and Ms. Painter worked together collegially over the next week or so to ensure that all students in the class had destroyed the write up and signed verifications attesting to that effect.

49.     On August 8, 2022, a meeting occurred between Carlow and UPMC and personnel.

50.    The attendees included Dr. Terri Collin Dilmore, the Clinical Director of the Psy.D.  Program at Carlow, Tiffany Painter, Program Director for the Center for Eating Disorders Ambulatory Programs at UPMC-WPIC, Dr. Rachel Kolko Conlon of the University of Pittsburgh School of Medicine and WPIC, Mark Zacariah of the UPMC Legal Department, and Dr. Joshua Bernstein, Carlow's Psy. D. Program Director.

51.    Dr. Kelley was not invited to the meeting although it pertained to her course.

52.    At the meeting Ms. Painter falsely suggested that graduate student B.S. had recorded the therapy session and falsely suggested that the patient had been identified by the graduate student.

53.    According to Carlow, Ms. Painter conveyed that Dr. Kelley had demonstrated hostility, defensiveness, and lack of collaboration with her, and a lack of professionalism in her work as a faculty member; that Dr. Kelley had shown an inability to interact collegially with this external partner; that she had demonstrated actions that threatened the working relationship with an important clinical provider, the UPMC-WPIC clinic, and that she had failed to follow the canons and professional ethics of her discipline.

54.    These allegations were false and denied by Dr. Kelley.

55.    On August 23, 2022 Carlow University Provost and Vice-President of Academic Affairs Sibdas Ghosh, Ph.D. provided Dr. Kelley with a Notice of her pending dismissal indicating that the "precipitating event for this actions involved your interaction with personnel from an external partner at UPMC, related to a potential ethical violation by one of your students, as well as related to your interaction with a student, Vincent Reginella."

56.    Contrary to WPIC, UPMC, and Carlow's accusations, Dr. Kelley did not show "hostility," "defensiveness," or a "lack of collaboration" with UPMC or WPIC because at all times,

7

she acted in a professional manner, and did not deserve discharge and the stripping of her tenure.

57.     On September 6, 2022, Dr. Kelley met with Provost Ghosh, Dean Matt Gordley, Chief Human Resources Officer and Associate VP Dr. Mary Anne Koleny, adjunct faculty member William Schweers, and Nicole Rivas, the  Provost's assistant.

58.     Among other things, Dr. Kelley denied the false accusations against her.  She reminded Dean Gordley that the Program Director, Joshua Bernstein, Ph.D., sent the Department Chair Clara Cheng an email on June 27, 2022 outlining Mr. Reginella's ethical violations for sharing the write up with his girlfriend, WPIC therapist Salerno.  Dr. Kelley related that she had consulted with the Pennsylvania Psychological Association's lawyer who confirmed that the male graduate student had committed an egregious ethical breach.  She further explained that the student has a documented history of disrespectful, unprofessional, hostile and arrogant behavior toward faculty, especially female faculty.  She also conveyed that in a June 30, 2022 Zoom meeting,  Program Director Bernstein said that this student had emailed him a complaint but he (Bernstein) had not replied because he knew Dr. Kelley did not do what was alleged.  Dean Gordley however responded that he believed the student over Dr. Kelley without elaboration.

59.     Dr. Kelley further confirmed that she had one brief and professional conversation with Ms. Painter on June 27, 2022 and, thereafter, they emailed back and forth professionally and that in one email Ms. Painter thanked Dr. Kelley for her helpfulness.

60.     By letter dated September 21, 2022, Provost Ghosh raised a new allegation and falsely accused Dr. Kelley of making an "illegal" recording of her conversation with student Reginella (which was the second false allegation against a woman in this matter asserting improper recording).

61.     The recording of one's own voice as here rather than a two-party conversation is not illegal and does not violate either Pennsylvania's Wiretapping Act or the federal wiretapping law.

62.     Dr. Kelley did not record any two-party conversation.

63.     In addition, this issue previously was addressed in a Teams meeting with Dean Gordley and others on July 11, 2022, at which the Dean heard Dr. Kelley state that she had recorded only her own voice in conversation with Reginella.

64.     On October 14, 2022, Dr. Kelley submitted a letter in her defense indicating that she was a lesbian mother with a disabled child, and that she felt harassed and subjected to continued harassment and a hostile work environment.

65.     On October 25, 2022, and in violation of Carlow's due process policies and procedures and American Association of University Professors (AAUP)'s standards, Provost Ghosh informed Dr. Kelley, a tenured Full Professor, that her employment was terminated "for cause" effective October 28, 2022.  Provost Ghosh wrote that her behavior with an external partner (UPMC-WPIC) was "of grave concern," and her "unlawful recording" of a conversation with her student (Reginella) without his consent warranted termination.

66.     Dr. Kelley did not record the conversation with the student.  The recording of one's own side of a conversation is not illegal.

67.     Even if these false allegations were true, which they are not, they do not meet the serious "for cause" standard to summarily fire a tenured, Full Professor.

68.     Astonishingly, Dean Gordley, who listened to the recording at a Grievance Hearing on December 14, 2022, went so far as to falsely claim that he could hear the voice of the male student (Reginella) on the soundtrack in order to justify the unusual and severe discharge of

9

Dr. Kelley who recorded only her own voice.

69.     Dr. Kelley asked Ms. Painter to come to a grievance hearing on December 14, 2022 to clear up the falsehood that Dr. Kelley had acted unprofessionally and/or jeopardized Carlow's relationship with UPMC and WPIC but Ms. Painter did not reply or appear.

70.     Likewise, Vincent Reginella declined to respond to Dr. Kelley's invitation to appear, and, instead, contacted Dean Gordley to ask if he had to attend.

71.     Reginella did not attend.

72.     Carlow's justifications for Dr. Kelley's termination are false and a pretext for discrimination.

73.     Under University procedures for tenured professors, Carlow is required to establish just cause for termination.

74.     Carlow failed to demonstrate just cause for Dr. Kelley's termination.

75.     Carlow failed to provide a forum for Dr. Kelley to confront or cross-examine her accusers.

76.     Nevertheless, Carlow terminated Dr. Kelley and denied her appeal.

77.     In violation of University and generally-held academic policies and procedures, Carlow improperly placed the burden of proof and persuasion on Dr. Kelley to show after-the-fact, without discovery, without cross-examination of the individuals who accused her of misconduct, and without counsel that her termination somehow violated either university academic freedom or due process principles.

78.     As a result of the discrimination and wrongful termination, Dr. Kelley has suffered damages including, but not limited to, lost salary, benefits, retirement contributions, and financial

support for her child's higher education.

79.     As a result of the discrimination and wrongful termination, Dr. Kelley has suffered

compensatory damages including, but not limited to, pain, suffering, inconvenience, humiliation, loss

of enjoyment of life, and harm to reputation.

80.     Dr. Kelley requests all remedies and damages permitted under law.

81.     Dr. Kelley demands a jury trial.

## VI.  COUNTS

### COUNT I: SEX DISCRIMINATION
### Violation of Title VII of the Civil Rights Act of 1964, As Amended

82.     The preceding paragraphs are incorporated as if set forth at length herein.

83.     As a female, Plaintiff is a member of a protected class.

84.     Plaintiff was qualified for her position as a Professor based on her education,

training, and experience including that she had held the same position from 2014 through October

2022.

85.     Plaintiff suffered  adverse employment actions when she was terminated.

86.     Plaintiff also suffered an adverse employment action when she was put on temporary

administrative leave, removed from the classroom, barred from working with her dissertation

students, and/or prohibited from serving on committees or engaging with external partners.  These

actions constitute discrimination with respect to the terms and conditions of Plaintiff's employment

and under Title VII.

87.     The circumstances support an inference of sex discrimination.

88.     Based on information and belief, employees outside of Dr. Kelley's protected classes accused of similar and worse misconduct were not terminated for cause or put on administrative leave.

89.     Other male employees at Carlow have been able to act improperly including creating a sexually hostile work environment without consequences.

90.     For example, Dr. Bernstein, a 52 year old heterosexual white male Associate Professor in the same Department as Dr. Kelley, was accused of discussing his prior night's sexual conquests with the psychology department administrative assistant.  Dr. Bernstein also engaged in inappropriate behavior toward a female African American doctoral student causing her to drop his class mid-Fall semester 2021.  Such a withdrawal had not happened since the inception of the Psy.D. Program in 2007.  His inappropriate behavior toward this doctoral student further caused her to drop out of the doctoral psychology program altogether in May 2022.  She spoke about his inappropriate behavior at the grievance hearing held on December 14, 2022.

91.     In contrast to Plaintiff, Dr. Bernstein was not terminated, nor was he put on temporary administrative leave, removed from the classroom, barred from working with his dissertation students, prohibited from serving on committees, and/or engaging with external partners.

92.     After engaging in inappropriate behavior with the psychology department administrative assistant, Dr. Bernstein was tenured and promoted to Associate Professor after his misconduct.  In May 2022, he was made the Psy.D. Program Director.

93.     After engaging in inappropriate behavior with the doctoral student causing her to drop his class and then drop out of the program altogether, Dr. Bernstein was made the Psy.D. Program Director.

94.     Provost Ghosh, a heterosexual male, was accused of repeatedly staring at faculty women's breasts.

95.     In contrast to Plaintiff, Provost Ghosh was not terminated, nor was he put on temporary administrative leave, removed from the classroom, barred from working with dissertation students, prohibited from serving on committees or engaging with external partners.

96.     Believed to be then in his twenties, Mr. Reginella is a sufficiently younger male who has been in the program for several years, has a documented history of hostility and disrespect toward faculty including Dr. Kelley, breached confidentiality, falsified that a female student recorded a patient, and falsified that Dr. Kelley mistreated him, yet he was believed over Dr. Kelley, a longtime older female faculty member, not removed from the program whereas Dr. Kelley was stripped of her tenured position and discharged reflecting highly disparate treatment.

97.     Based on information and belief, employees outside of Dr. Kelley's protected classes have assumed her duties and responsibilities and replaced her.

98.     The misconduct accusations against Dr. Kelley are false and an absurd pretext for discrimination including destroying Dr. Kelley's reputation, her tenure, and career.

99.     WHEREFORE, Plaintiff respectfully prays that this Court:

A.     Issue a declaratory judgment that the acts, policies, practices, and procedures of Defendants complained of herein violated and continue to violate the right of Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e et seq.;

B.     Order Defendants to make Plaintiff whole by providing appropriate back pay and reimbursement for lost retirement and other benefits and expenses in an amount to be shown at trial;

C.     In lieu of reinstatement, award front pay until retirement;

D.     Award damages for pain, suffering, inconvenience, humiliation, loss of enjoyment of life, and harm to reputation;

E.     Award punitive damages to Plaintiff;

F.     Grant to Plaintiff her attorneys' fees, costs, and disbursements;

G.     Grant to Plaintiff a tax gross-up to cover the cost of a lump sum payment for back pay;

H.     Grant to Plaintiff prejudgment and postjudgment interest; and

I.     Grant such further and additional relief as may to the Court seem proper.

## COUNT II: SEXUAL ORIENTATION DISCRIMINATION
### Violation of Title VII of the Civil Rights Act of 1964, As Amended

100.    The preceding paragraphs are incorporated as if set forth at length herein.

101.    As a lesbian, Plaintiff is a member of a protected class.

102.    Plaintiff was qualified for her position as a Professor based on her education, training, and experience including that she had held the same position from 2014 through October 2022.

103.    Plaintiff suffered an adverse employment action when she was terminated.

104.    Plaintiff also suffered an adverse employment action when she was put on temporary administrative leave, removed from the classroom, barred from working with her dissertation students, and prohibited from serving on committees or engaging with external partners.  These actions constitutes discrimination with respect to the terms and conditions of Plaintiff's employment and are actionable under Title VII.

14

105.    The  circumstances support an inference of sexual orientation discrimination.

106.    Based on information and belief, employees outside of Dr. Kelley's protected classes accused of similar and worse misconduct were not terminated for cause or put on administrative leave.

107.    Other male and non-LGBTQ employees at Carlow have been able to act improperly including creating a sexually hostile work environment without consequences.

108.    For example, Dr. Bernstein, a 52 year old heterosexual white male professor in the same Department as Dr. Kelley, was accused of discussing his prior night's sexual conquests with the psychology department administrative assistant.  Dr. Bernstein also engaged in inappropriate behavior toward a female African American doctoral student causing her to drop his class mid-Fall semester 2021.  Such a withdrawal had not occurred since the inception of the Psy.D. Program in 2007.  Dr. Bernstein's inappropriate behavior toward this doctoral student further caused her to drop out of the doctoral psychology program altogether in May 2022.  She spoke about this inappropriate behavior at the grievance hearing held on December 14, 2022.

109.    In contrast to Plaintiff, Dr. Bernstein was not terminated, nor was he put on temporary administrative leave, removed from the classroom, barred from working with his dissertation students,  prohibited from serving on committee and/or engaging with external partners.

110.    After engaging in inappropriate behavior with the with the psychology department administrative assistant, Dr. Bernstein was tenured and promoted to Associate Professor after this incident.  In May 2022, he was made the Psy.D. Program Director.

111.    After engaging in inappropriate behavior with the doctoral student causing her to drop his class and then drop out of the program altogether, Dr. Bernstein was made the Psy.D.

Program Director.

112.     Terri Collin Dilmore, Ph.D. is a 45 year old, heterosexual, female faculty member in the same Department as Plaintiff.

113.     Dr. Dilmore was accused by a number of doctoral psychology students of mistreating students.  In fact, an entire cohort of doctoral psychology students threatened to go to the American Psychological Association, the organization which accredits Carlow's doctoral program in Counseling Psychology, to file a complaint about how poorly she treats students.

114.     Three doctoral students took classes at other universities to avoid taking Dr. Dilmore's class due to her mistreatment of students.

115.     Following the accusations of mistreating students, Dr. Dilmore was tenured and promoted to Associate Professor.

116.     Dr. Dilmore also engaged in inappropriate behavior toward a female African American doctoral student causing her to drop out of the doctoral psychology program altogether in May 2022.  The doctoral student spoke about Dr. Dilmore's inappropriate behavior at the grievance hearing held on December 14, 2022.

117.     In contrast to Plaintiff, Dr. Dilmore was not terminated, put on temporary administrative leave, removed from the classroom, barred from working with her dissertation students, prohibited from serving on committees or engaging with external partners.

118.     Provost Ghosh, a heterosexual male, was accused of repeatedly staring at faculty women's breasts.

119.     In contrast to Plaintiff, Provost Ghosh was not terminated, nor was he put on temporary administrative leave, removed from the classroom, barred from working with dissertation

16

students,  prohibited from serving on committees and/or engaging with external partners.

120.    Believed to be in then his twenties, Mr. Reginella is a sufficiently younger male non-LGBTQ individual who has been in the program for several years, was hostile and disrespectful to faculty including Dr. Kelley, breached confidentiality, falsified that a female student recorded a patient, and falsified that Dr. Kelley mistreated him, yet he was believed over Dr. Kelley, and removed from the program whereas Dr. Kelley was stripped of her tenured position and discharged reflecting highly disparate treatment.

121.    Based on information and belief, employees outside of Dr. Kelley's protected classes have assumed her duties and responsibilities and replaced her.

122.    The misconduct accusations against Dr. Kelley are false and an absurd pretext for discrimination including destroying Dr. Kelley, her tenure, and career.

123.    WHEREFORE, Plaintiff respectfully prays that this Court:

A.    Issue a declaratory judgment that the acts, policies, practices, and procedures of Defendants complained of herein violated and continue to violate the right of Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e et seq.;

B.    Order Defendants to make Plaintiff whole by providing appropriate back pay and reimbursement for lost retirement and other benefits and expenses in an amount to be shown at trial;

C.    In lieu of reinstatement, award front pay until retirement;

D.    Award damages for pain, suffering, inconvenience, humiliation, loss of enjoyment of life, and harm to reputation;

E.    Award punitive damages to Plaintiff;

F.      Grant to Plaintiff her attorneys' fees, costs, and disbursements;

G.      Grant to Plaintiff a tax gross-up to cover the cost of a lump sum payment for back pay;

H.      Grant to Plaintiff prejudgment and postjudgment interest; and

I.      Grant such further and additional relief as may to the Court seem proper.

**COUNT III: SEX DISCRIMINATION**
**<u>Violation of Title IX, 20 U.S.C. § 1681 et seq.</u>**

124.    The preceding paragraphs are incorporated as if set forth at length herein.

125.    Title IX prohibits sex discrimination in educational institutions that receive funding from the federal government.

126.    Carlow is an educational institution that receives funding from the federal government.

127.    As a female, Plaintiff is a member of a protected class.

128.    Plaintiff was qualified for her position as a Professor based on her education, training, and experience including that she had held the same position from 2014 through October 2022.

129.    Plaintiff suffered  adverse employment actions when she was terminated.

130.    Plaintiff also suffered an adverse employment action when she was put on temporary administrative leave, removed from the classroom, barred from working with her dissertation students, and/or  prohibited from serving on committees or engaging with external partners.  These actions constitutes discrimination with respect to the terms and conditions of Plaintiff's employment and are actionable under Title IX.

131.    There are circumstances that support an inference of sex discrimination.

132.    Based on information and belief, employees outside of Dr. Kelley's protected classes accused of similar and worse misconduct were not terminated for cause or put on administrative leave.

133.    Other male employees at Carlow have been able to act improperly including creating a sexually hostile work environment without consequences.

134.    For example, Dr. Bernstein, a 52 year old heterosexual white male professor in the same Department as Dr. Kelley, was accused of discussing his prior night's sexual conquests with the psychology department administrative assistant. Dr. Bernstein also engaged in inappropriate behavior toward a female African American doctoral student causing her to drop his class mid-Fall semester 2021. Such a withdrawal had not happened since the inception of the Psy.D. Program in 2007. Dr. Bernstein's inappropriate behavior toward this doctoral student further caused her to drop out of the doctoral psychology program altogether in May 2022. She spoke about inappropriate behavior at the grievance hearing held on December 14, 2022.

135.    In contrast to Plaintiff, Dr. Bernstein was not terminated,  put on temporary administrative leave, removed from the classroom, barred from working with his dissertation students, prohibited from serving on committees and/or engaging with external partners.

136.    After engaging in inappropriate behavior with the with the psychology department administrative assistant, Dr. Bernstein was tenured and promoted to associate Professor. In May 2022, he was made the Psy.D. Program Director.

137.    After engaging in inappropriate behavior with the doctoral student causing her to drop his class and then drop out of the program altogether, Dr. Bernstein was made the Psy.D. Program Director.

19

138.    Provost Ghosh, a heterosexual male, was accused of repeatedly staring at women's breasts.

139.    In contrast to Plaintiff, Provost Ghosh was not terminated, put on temporary administrative leave, removed from the classroom, barred from working with dissertation students, prohibited from serving on committees, and/or engaging with external partners.

140.    Believed to be then in his twenties, Mr. Reginella is a sufficiently younger male who has been in the program for several years, was hostile to faculty including Dr. Kelley, breached confidentiality, falsified that a female student recorded a patient, and falsified that Dr. Kelley mistreated him, yet he was not removed from the program whereas Dr. Kelley was stripped of her tenured position and discharged reflecting highly disparate treatment.

141.    Based on information and belief, employees outside of Dr. Kelley's protected classes have assumed her duties and responsibilities and replaced her.

142.    The misconduct accusations against Dr. Kelley are false and an absurd pretext for discrimination for destroying Dr. Kelley, her tenure, and career.

143.    WHEREFORE, Plaintiff respectfully prays that this Court:

A.    Issue a declaratory judgment that the acts, policies, practices, and procedures of Defendants complained of herein violated and continue to violate the right of Plaintiff under Title IX;

B.    Order Defendants to make Plaintiff whole by providing appropriate back pay and reimbursement for lost retirement and other benefits and expenses in an amount to be shown at trial;

C.    In lieu of reinstatement, award front pay until retirement;

D.     Award damages for pain, suffering, inconvenience, humiliation, loss of enjoyment of life, and harm to reputation;

E.     Grant to Plaintiff her attorneys' fees, costs, and disbursements;

F.     Grant to Plaintiff a tax gross-up to cover the cost of a lump sum payment for back pay;

G.     Grant to Plaintiff prejudgment and postjudgment interest; and

H.     Grant such further and additional relief as may to the Court seem proper.

### COUNT IV: SEXUAL ORIENTATION DISCRIMINATION
### Violation of Title IX, 20 U.S.C. § 1681 et seq.

144.     The preceding paragraphs are incorporated as if set forth at length herein.

145.     Title IX prohibits sex discrimination in educational institutions that receive funding from the federal government.

146.     Carlow is an educational institution that receives funding from the federal government.

147.     As a lesbian, Plaintiff is a member of a protected class.

148.     Plaintiff was qualified for her position as a Professor based on her education, training, and experience including that she had held the same position from 2014 through October 2022.

149.     Plaintiff suffered an adverse employment action when she was terminated.

150.     Plaintiff also suffered  adverse employment actions when she was put on temporary administrative leave, removed from the classroom, barred from working with her dissertation students, prohibited from serving on committees, and/or engaging with external partners.  This action constitutes discrimination with respect to the terms and conditions of Plaintiff's employment and is

actionable under Title IX.

151.    These circumstances support an inference of sexual orientation

discrimination.

152.    Based on information and belief, employees outside of Dr. Kelley's protected

classes accused of similar and worse misconduct were not terminated for cause or put on

administrative leave.

153.    Other male and non-LGBTQ employees at Carlow have been able to act improperly

including creating a sexually hostile work environment without consequences.

154.    For example, Dr. Bernstein, a 52 year old heterosexual white male professor in

the same Department as Dr. Kelley, was accused of discussing his prior night's sexual conquests

with the psychology department administrative assistant.  Dr. Bernstein also engaged in inappropriate

behavior toward a female African American doctoral student causing her to drop his class mid-Fall

semester 2021.  Such a withdrawal had not happened since the inception of the Psy.D. Program in

2007.  Dr. Bernstein's inappropriate behavior toward this doctoral student further caused her to drop

out of the doctoral psychology program altogether in May 2022.  She spoke about his inappropriate

behavior at the grievance hearing held on December 14, 2022.

155.    In contrast to Plaintiff, Dr. Bernstein was not terminated, nor was he put on

temporary administrative leave, removed from the classroom, barred from working with his

dissertation students, prohibited from serving on committees, and/or engaging with external partners.

156.    After engaging in inappropriate behavior with the with the psychology

department administrative assistant, Dr. Bernstein was tenured and promoted to Associate Professor.

In May 2022, he was made the Psy.D. Program Director.

157.    After engaging in inappropriate behavior with the doctoral student causing her to drop his class and then drop out of the program altogether, Dr. Bernstein was made the Psy.D. Program Director.

158.    Terri Collin Dilmore, Ph.D. is a 45 year old, heterosexual, female faculty member in the same Department as Plaintiff.

159.    Dr. Dilmore was accused by a number of doctoral psychology students of mistreating students.  In fact, an entire cohort of doctoral psychology students threatened to go to the American Psychological Association, the organization that accredits Carlow's doctoral program in Counseling Psychology, to file a complaint about how poorly she treats students.

160.    Three doctoral students took classes at other universities to avoid taking Dr. Dilmore's class due to her mistreatment of students.

161.    Following the accusations of mistreating students, Dr. Dilmore was tenured and promoted to Associate Professor.

162.    Dr. Dilmore also engaged in appropriate behavior toward a female African American doctoral student causing her to drop out of the doctoral psychology program altogether in May 2022.  The doctoral student spoke about Dr. Dilmore's inappropriate behavior at the grievance hearing held on December 14, 2022.

163.    In contrast to Plaintiff, Dr. Dilmore was not terminated, nor was she put on temporary administrative leave, removed from the classroom, barred from working with her dissertation students, prohibited from serving on committees and/or engaging with external partners.

164.    Provost Ghosh, a heterosexual male, was accused of repeatedly staring at women's breasts.

23

165.    In contrast to Plaintiff, Provost Ghosh was not terminated, put on temporary administrative leave, removed from the classroom, barred from working with dissertation students, prohibited from serving on committees, and/or engaging with external partners.

166.    Believed to be then in his twenties, Mr. Reginella is a sufficiently younger male non-LGBTQ individual who has been in the program for several years, was hostile to faculty including Dr. Kelley, breached confidentiality, falsified that a female student recorded a patient, and falsified that Dr. Kelley mistreated him, yet he was believed over Dr. Kelley, and not removed from the program whereas Dr. Kelley was stripped of her tenured position and discharged reflecting highly disparate treatment.

167.    Based on information and belief, employees outside of Dr. Kelley's protected classes have assumed her duties and responsibilities and replaced her.

168.    The misconduct accusations against Dr. Kelley are false and an absurd pretext for discrimination for destroying Dr. Kelley, her tenure, and career.

169.    WHEREFORE, Plaintiff respectfully prays that this Court:

A.    Issue a declaratory judgment that the acts, policies, practices, and procedures of Defendants complained of herein violated and continue to violate the right of Plaintiff under Title IX;

B.    Order Defendants to make Plaintiff whole by providing appropriate back pay and reimbursement for lost retirement and other benefits and expenses in an amount to be shown at trial;

C.    In lieu of reinstatement, award front pay until retirement;

D.    Award damages for pain, suffering, inconvenience, humiliation, loss of enjoyment of life, and harm to reputation;

24

E.     Grant to Plaintiff her attorneys' fees, costs, and disbursements;

F.     Grant to Plaintiff a tax gross-up to cover the cost of a lump sum payment for back pay;

G.     Grant to Plaintiff prejudgment and postjudgment interest; and

H.     Grant such further and additional relief as may to the Court seem proper.

### COUNT V: AGE DISCRIMINATION
### Violation of Age Discrimination in Employment Act, 29 U.S.C. § 621

170.     The preceding paragraphs are incorporated as if set forth at length herein.

171.     As an individual over the age of 40 as she is 67 years of age, Plaintiff is a member of a protected class.

172.     Plaintiff was qualified for her position as a Professor based on her education, training, and experience including that she had held the same position from 2014 through October 2022.

173.     Plaintiff suffered an adverse employment action when she was terminated.

174.     Plaintiff also suffered an adverse employment action when she was put on temporary administrative leave, removed from the classroom, barred from working with her dissertation students, and prohibited from serving on committees or engaging with external partners.  This action constitutes discrimination with respect to the terms and conditions of Plaintiff's employment and is actionable under the ADEA.

175.     These circumstances support an inference of age discrimination.

176.     Based on information and belief, employees outside of Dr. Kelley's protected classes accused of similar and worse misconduct were not terminated for cause or put on administrative leave.

25

177.   Other sufficiently younger employees at Carlow have been able to act improperly including creating a sexually hostile work environment without consequences.

178.   For example, Dr. Bernstein, a 52 year old heterosexual white male professor in the same Department as Dr. Kelley, was accused of discussing his prior night's sexual conquests with the psychology department administrative assistant.  Dr. Bernstein also engaged in inappropriate behavior toward a female African American doctoral student causing her to drop his class mid-Fall semester 2021.  Such a withdrawal had not happened since the inception of the Psy.D. Program in 2007.  Dr. Bernstein's inappropriate behavior toward this doctoral student further caused her to drop out of the doctoral psychology program altogether in May 2022.  She spoke about his inappropriate behavior at the grievance hearing held on December 14, 2022.

179.   In contrast to Plaintiff, Dr. Bernstein was not terminated, put on temporary administrative leave, removed from the classroom, barred from working with his dissertation students, or prohibited from serving on committees and/or engaging with external partners.

180.   After engaging in inappropriate behavior with the with the psychology department administrative assistant, Dr. Bernstein was tenured and promoted to Associate Professor after this incident.  In May 2022, he was made the Psy.D. Program Director.

181.   After engaging in inappropriate behavior with the doctoral student causing her to drop his class and then drop out of the program altogether, Dr. Bernstein was made the Psy.D. Program Director.

182.   Terri Collin Dilmore, Ph.D. is a 45 year old, heterosexual, female faculty member in the same Department as Plaintiff.

183.   Dr. Dilmore was accused by a number of doctoral psychology students of

mistreating students.  In fact, an entire cohort of doctoral psychology students threatened to go to the American Psychological Association, the organization that accredits Carlow's doctoral program in Counseling Psychology, to file a complaint about how poorly she treats students.

184.    Three doctoral students took classes at other universities to avoid taking Dr. Dilmore's class due to her mistreatment of students.

185.    Following the accusations of mistreating students, Dr. Dilmore was tenured and promoted to Associate Professor.

186.    Dr. Dilmore also engaged in appropriate behavior toward a female African American doctoral student causing her to drop out of the doctoral psychology program altogether in May 2022.  The doctoral student testified to Dr. Dilmore's inappropriate behavior at the grievance hearing held on December 14, 2022.

187.    In contrast to Plaintiff, Dr. Dilmore was not terminated, nor was she put on temporary administrative leave, removed from the classroom, barred from working with her dissertation students, prohibited from serving on committees and/or engaging with external partners.

188.    Believed to be then in his twenties, Mr. Reginella is a sufficiently younger male who has been in the program for several years, was hostile to faculty including Dr. Kelley, breached confidentiality, falsified that a female student recorded a patient, and falsified that Dr. Kelley mistreated him, yet he was belived over Dr. Kelley, and not removed from the program whereas Dr. Kelley was stripped of her tenured position and discharged reflecting highly disparate treatment.

189.    Based on information and belief, employees outside of Dr. Kelley's protected classes have assumed her duties and responsibilities and replaced her.

190.    The misconduct accusations against Dr. Kelley are false and an absurd pretext for

discrimination for destroying Dr. Kelley, her tenure, and career.

191.    WHEREFORE, Plaintiff respectfully prays that this Court:

A.    Issue a declaratory judgment that the acts, policies, practices, and procedures of Defendants complained of herein violated and continue to violate the rights of Plaintiff under the Age Discrimination in Employment Act;

B.    Order Defendants to make Plaintiff whole by providing appropriate back pay and reimbursement for lost retirement and other benefits and expenses in an amount to be shown at trial;

C.    In lieu of reinstatement, award front pay until retirement;

D.    Award liquidated damages to Plaintiff;

E.    Grant to Plaintiff her attorneys' fees, costs, and disbursements;

F.    Grant to Plaintiff a tax gross-up to cover the cost of a lump sum payment for back pay;

G.    Grant to Plaintiff prejudgment and postjudgment interest; and

H.    Grant such further and additional relief as may to the Court seem proper.

## COUNT VI
## Violation of the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701 et seq.

192.    The preceding paragraphs are incorporated as if set forth at length herein.

193.    The Rehabilitation Act prohibits recipients of federal funding from discriminating on the basis of disability.

194.    Carlow is a recipient of federal funding and, as such, is subject to the Rehabilitation Act.

195.    Plaintiff was (and is) disabled and/or regarded by Defendant to be disabled under the

the Rehabilitation Act.

196.     Plaintiff's PTSD is (and was during the events of this case) a mental impairment under the Rehabilitation Act.

197.     Plaintiff was during the events of this case substantially limited with respect to major life activities including, but not limited to, her sleeping, thinking, eating, and it stimulated anxiety and depression, and/or she was regarded by Defendant as being substantially limited with respect to these major life activities.

198.     Plaintiff was a qualified individual able to perform the essential functions of available positions for which she was qualified with or without reasonable accommodations.

199.     Plaintiff suffered an adverse employment actions when she was terminated.

200.     Plaintiff also suffered an adverse employment action when she was put on temporary administrative leave, removed from the classroom, barred from working with her dissertation students, and prohibited from serving on committees or engaging with external partners.  This action constitutes discrimination with respect to the terms and conditions of Plaintiff's employment and is actionable under the Rehabilitation Act.

201.     There are circumstances that support an inference of disability discrimination.

202.     Based on information and belief, Carlow replaced Plaintiff with someone outside her protected class and/or the individuals assigned to perform her duties are outside her protected class.

203.     Based on information and belief, Carlow treated similarly situated employees outside her protected class more favorably including that they were not put on administrative leave and fired for similar alleged infractions, conduct, or actions.

204.     For example, Dr. Bernstein, a 52 year old heterosexual white male professor in

the same Department as Dr. Kelley, was accused of discussing his prior night's sexual conquests with the psychology department administrative assistant.  Dr. Bernstein also engaged in inappropriate behavior toward a female African American doctoral student causing her to drop his class mid-Fall semester 2021.  Such a withdrawal had not  happened since the inception of the Psy.D. Program in 2007.  Dr. Bernstein's inappropriate behavior toward this doctoral student further caused her to drop out of the doctoral psychology program altogether in May 2022.  She testified to his inappropriate behavior at the grievance hearing held on December 14, 2022.

205.     In contrast to Plaintiff, Dr. Bernstein was not terminated, nor was he put on temporary administrative leave, removed from the classroom, barred from working with his dissertation students, prohibited from serving on committees or engaging with external partners.

206.     After engaging in inappropriate behavior with the with the psychology department administrative assistant, Dr. Bernstein was tenured and promoted to Associate Professor after this incident.  In May 2022, he was made the Psy.D. Program Director.

207.     After engaging in inappropriate behavior with the doctoral student causing her to drop his class and then drop out of the program altogether, Dr. Bernstein was made the Psy.D. Program Director.

208.     Terri Collin Dilmore, Ph.D. is a 45 year old, heterosexual, female faculty member in the same Department as Plaintiff.

209.     Dr. Dilmore was accused by a number of doctoral psychology students of mistreating students.  In fact, an entire cohort of doctoral psychology students threatened to go to the American Psychological Association, the organization that accredits Carlow's doctoral program in Counseling Psychology, to file a complaint about how poorly she treats students.

210.   Three doctoral students took classes at other universities to avoid taking Dr.

Dilmore's class due to her mistreatment of students.

211.   Following the accusations of mistreating students, Dr. Dilmore was tenured and

promoted to Associate Professor.

212.   Dr. Dilmore also engaged in inappropriate behavior toward a female African

American doctoral student causing her to drop out of the doctoral psychology program altogether in

May 2022.  The doctoral student testified to Dr. Dilmore's inappropriate behavior at the grievance

hearing held on December 14, 2022.

213.   In contrast to Plaintiff, Dr. Dilmore was not terminated, put on

temporary administrative leave, removed from the classroom, barred from working with her

dissertation students, prohibited from serving on committees, and/or engaging with external partners.

214.   Provost Ghosh, a heterosexual male, was accused of repeatedly staring at

faculty women's breasts.

215.   In contrast to Plaintiff, Provost Ghosh was not terminated, put on

temporary administrative leave, removed from the classroom, barred from working with dissertation

students, prohibited from serving on committees, and/or engaging with external partners.

216.   The disparate treatment discrimination against Plaintiff by Carlow was intentional.

217.   The reasons given by Carlow for Plaintiff's administrative leave and termination of

employment are nothing more than a pretext and based on stereotypes of individuals with mental

impairments, and have been asserted by Defendant to cover up the intentional discriminatory actions

taken by Defendant.

218.   The aforementioned conduct of Defendant has resulted in damages to Plaintiff,

including, but not limited to, loss of pay, loss of benefits, humiliation, embarrassment, harm to reputation, and pain and suffering.

219.    Plaintiff requests that the Court order injunctive relief to address the unlawful conduct complained of herein.

220.    WHEREFORE, Plaintiff respectfully requests the following relief:

A.    All wages and benefits Plaintiff would have received but for the discrimination, including prejudgment interest;

B.    Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, embarrassment, harm to reputation, and pain and suffering caused by Defendant's conduct;

C.    Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.    Front pay in lieu of reinstatement;

E.    A permanent injunction enjoining Defendant from engaging in the discriminatory practices complained of herein;

F.    A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of federal law;

G.    The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein, and is determined to be in full compliance with the law;

H.    An award of reasonable attorney's fees, costs, and litigation expenses; and

I.    Such other relief as the Court may deem just or equitable.

**COUNT VII**
**Violation of the Americans With Disabilities Act (ADA)**

221.    The preceding paragraphs are incorporated as if set forth at length herein.

222.    Plaintiff was (and is) disabled and/or regarded by Defendant to be disabled under the the Rehabilitation Act.

223.    Plaintiff's PTSD is (and was during the events of this case) a mental impairment under the ADA.

224.    Plaintiff was during the events of this case substantially limited with respect to major life activities including, but not limited to, her sleeping, thinking, eating, and stimulated anxiety and depression, and/or she was regarded by Defendant as being substantially limited with respect to these major life activities.

225.    Plaintiff was a qualified individual able to perform the essential functions of available positions for which she was qualified with or without reasonable accommodations.

226.    Plaintiff suffered an adverse employment action when she was terminated.

227.    Plaintiff also suffered an adverse employment action when she was put on temporary administrative leave, removed from the classroom, barred from working with her dissertation students, and prohibited from serving on committees or engaging with external partners.  This action constitutes discrimination with respect to the terms and conditions of Plaintiff's employment and is actionable under the Rehabilitation Act.

228.    There are circumstances that support an inference of disability discrimination.

229.    Based on information and belief, Carlow replaced Plaintiff with someone outside her protected class and/or the individuals assigned to perform her duties are outside her protected class.

230.     Based on information and belief, Carlow treated similarly situated employees outside her protected class more favorably including that they were not put on administrative leave and fired for similar alleged infractions, conduct, or actions.

231.     For example, Dr. Bernstein, a 52 year old heterosexual white male professor in the same Department as Dr. Kelley, was accused of discussing his prior night's sexual conquests with the psychology department administrative assistant.  Dr. Bernstein also engaged in inappropriate behavior toward a female African American doctoral student causing her to drop his class mid-Fall semester 2021.  Such a withdrawal had not  happened since the inception of the Psy.D. Program in 2007.  Dr. Bernstein's inappropriate behavior toward this doctoral student further caused her to drop out of the doctoral psychology program altogether in May 2022.  She testified to his inappropriate behavior at the grievance hearing held on December 14, 2022.

232.     In contrast to Plaintiff, Dr. Bernstein was not terminated, put on temporary administrative leave, removed from the classroom, barred from working with his dissertation students, prohibited from serving on committees, and/or engaging with external partners.

233.     After engaging in inappropriate behavior with the with the psychology department administrative assistant, Dr. Bernstein was tenured and promoted to Associate Professor after this incident.  In May 2022, he was made the Psy.D. Program Director.

234.     After engaging in inappropriate behavior with the doctoral student causing her to drop his class and then drop out of the program altogether, Dr. Bernstein was made the Psy.D. Program Director.

235.     Terri Collin Dilmore, Ph.D. is a 45 year old, heterosexual, female faculty member in the same Department as Plaintiff.

236.    Dr. Dilmore was accused by a number of doctoral psychology students of mistreating students.  In fact, an entire cohort of doctoral psychology students threatened to go to the American Psychological Association, the organization that accredits Carlow's doctoral program in Counseling Psychology, to file a complaint about how poorly she treats students.

237.    Three doctoral students took classes at other universities to avoid taking Dr. Dilmore's class due to her mistreatment of students.

238.    Following the accusations of mistreating students, Dr. Dilmore was tenured and promoted to Associate Professor.

239.    Dr. Dilmore also engaged in appropriate behavior toward a female African American doctoral student causing her to drop out of the doctoral psychology program altogether in May 2022.  The doctoral student testified to Dr. Dilmore's inappropriate behavior at the grievance hearing held on December 14, 2022.

240.    In contrast to Plaintiff, Dr. Dilmore was not terminated, nor was she put on temporary administrative leave, removed from the classroom, barred from working with her dissertation students, or prohibited from serving on committees or engaging with external partners.

241.    Provost Ghosh, a heterosexual male, was accused of repeatedly staring at faculty women's breasts.

242.    In contrast to Plaintiff, Provost Ghosh was not terminated, put on temporary administrative leave, removed from the classroom, barred from working with dissertation students, or prohibited from serving on committees or engaging with external partners.

243.    The disparate treatment discrimination against Plaintiff by Carlow was intentional.

244.    The reasons given by Carlow for Plaintiff's administrative leave and termination of

employment are nothing more than a pretext and based on stereotypes of individuals with mental impairments, and have been asserted by Defendant to cover up the intentional discriminatory actions taken by Defendant.

245.    The aforementioned conduct of Defendant has resulted in damages to Plaintiff, including, but not limited to, loss of pay, loss of benefits, humiliation, embarrassment, harm to reputation, and pain and suffering.

246.    Plaintiff requests that the Court order injunctive relief to address the unlawful conduct complained of herein. Plaintiff was (and is) disabled and/or regarded by Defendant to be disabled under the ADA.

247.    WHEREFORE, Plaintiff respectfully requests the following relief:

A.    All wages and benefits Plaintiff would have received but for the discrimination, including prejudgment interest;

B.    Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, embarrassment, harm to reputation, and pain and suffering caused by Defendant's conduct;

C.    Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.    Front pay in lieu of reinstatement;

E.    Award punitive damages;

F.    A permanent injunction enjoining Defendant from engaging in the discriminatory practices complained of herein;

G.    A permanent injunction requiring Defendant to adopt employment practices and policies in accord and conformity with the requirements of federal law;

36

H.    The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein, and is determined to be in full compliance with the law;

I.    An award of reasonable attorney's fees, costs, and litigation expenses; and

J.    Such other relief as the Court may deem just or equitable.

### COUNT VIII: RETALIATION
### Violation fo Title VII of the Civil Rights Act of 1964, As Amended

248.    The preceding paragraphs are incorporated as if set forth at length herein.

249.    Plaintiff engaged in protected activity.

250.    On October 14, 2022, Dr. Kelley submitted a letter in her defense indicating that she was a lesbian mother with a disabled child, and that she felt harassed and subjected to continued harassment and a hostile work environment.

251.    Thereafter, Plaintiff suffered an adverse employment action when she was terminated effective October 28, 2022.

252.    A causal connection exists based on the close temporal proximity as well as the pretextual nature of Defendant's asserted justifications.

253.    The misconduct accusations against Dr. Kelley are false and an absurd pretext for discrimination for destroying Dr. Kelley, her tenure, and career.

254.    As a result of retaliation, Dr. Kelley has suffered financial damages including, but not limited to, lost salary, benefits, retirement contributions, and financial support for her child's higher education.

255.    As a result of retaliation, Dr. Kelley has suffered compensatory damages including, but not limited to, pain, suffering, inconvenience, humiliation, loss of enjoyment of life, and harm to reputation.

256.    WHEREFORE, Plaintiff respectfully prays that this Court:

A.    Issue a declaratory judgment that the acts, policies, practices, and procedures of Defendants complained of herein violated and continue to violate the right of Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e et seq.;

B.    Order Defendants to make Plaintiff whole by providing appropriate back pay and reimbursement for lost retirement and other benefits and expenses in an amount to be shown at trial;

C.    In lieu of reinstatement, award front pay until retirement;

D.    Award damages for pain, suffering, inconvenience, humiliation, loss of enjoyment of life, and harm to reputation;

E.    Award punitive damages to Plaintiff;

F.    Grant to Plaintiff her attorneys' fees, costs, and disbursements;

G.    Grant to Plaintiff a tax gross-up to cover the cost of a lump sum payment for back pay;

H.    Grant to Plaintiff prejudgment and postjudgment interest; and

I.    Grant such further and additional relief as may to the Court seem proper.

## COUNT IX: RETALIATION
### Violation of Title IX

257.    The preceding paragraphs are incorporated as if set forth at length herein.

258.    Plaintiff engaged in protected activity.

259.   On October 14, 2022, Dr. Kelley submitted a letter in her defense indicating that she was a single lesbian mother with a disabled child, and that she felt harassed and subjected to continued harassment and a hostile work environment.

260.   Thereafter, Plaintiff suffered an adverse employment action when she was terminated effective October 28, 2022.

261.   A causal connection exists based on the close temporal proximity as well as the pretextual nature of Defendant's asserted justifications.

262.   The misconduct accusations against Dr. Kelley are false and an absurd pretext for discrimination for destroying Dr. Kelley, her tenure, and career.

263.   As a result of retaliation, Dr. Kelley has suffered financial damages including, but not limited to, lost salary, benefits, retirement contributions, and financial support for her child's higher education.

264.   As a result of retaliation, Dr. Kelley has suffered compensatory damages including, but not limited to, pain, suffering, inconvenience, humiliation, loss of enjoyment of life, and harm to reputation.

265.   WHEREFORE, Plaintiff respectfully prays that this Court:

A.   Issue a declaratory judgment that the acts, policies, practices, and procedures of Defendants complained of herein violated and continue to violate the right of Plaintiff under Title IX;

B.   Order Defendants to make Plaintiff whole by providing appropriate back pay and reimbursement for lost retirement and other benefits and expenses in an amount to be shown at trial;

C.   In lieu of reinstatement, award front pay until retirement;

39

D.   Award damages for pain, suffering, inconvenience, humiliation, loss of enjoyment of life, and harm to reputation;

E.   Grant to Plaintiff her attorneys' fees, costs, and disbursements;

F.   Grant to Plaintiff a tax gross-up to cover the cost of a lump sum payment for back pay;

G.   Grant to Plaintiff prejudgment and postjudgment interest; and

H.   Grant such further and additional relief as may to the Court seem proper.

Respectfully Submitted,

LIEBER HAMMER HUBER & PAUL, P.C.


James B. Lieber
James B. Lieber
Pa. I.D. No. 21748
Thomas M. Huber
Pa. I.D. No. 83053
Jacob M. Simon
Pa. I.D. No. 202610
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231 (telephone)
(412) 687-3140 (fax)